Good afternoon, your honors. My name is Todd Glazer. I represent David Chase. With me today are two co-counselors. There's Kathleen DeSoto, representing Rebecca Staber, and Andy Nelson, representing Ron Staber. As far as time goes, we were told we were splitting the 20 minutes, so each of my co-counselors would like five minutes, and I would like 10 to reserve one to rebuttal. Anybody in the 79 total, please? We'll keep it off of that, but when we get down to 11, I'll raise my hand. Thank you, Judge Fletcher. This is a multi-defendant, multi-issue case, and we discussed some of the issues you may want to hear about before coming out. Most related to my case is the collateral estoppel doctrine, and I'd also like to discuss one sentencing issue in relation to Blakely as well. At the time I wrote the brief, I was not aware of two of Judge Alacon's briefs, United States v. Little and United States v. Ayers. There's also another one, United States v. Brady, and I have reviewed those, prepared to discuss those today. Essentially, my argument in relation to the collateral estoppel doctrine is, as my brief outlines, Article II, Section 11 of the Montana Constitution mirrors the Fourth Amendment, the Federal Constitution, and there's never been any disagreement or real deviation from that in Montana case law. However, the Montana Constitution does have a unique privacy right under Article II, Section 10. It says, The right of individual privacy is essential to the well-being of free society and shall not be infringed without the showing of compelling State interest. Essentially, what happened in this case is there was a search warrant issued by Judge McLean, and the search warrant application was made by a State officer. It was issued by Judge McLean, and ultimately when that motion to suppress came in front of Judge McLean, he ruled that that search warrant application lacked probable cause and therefore was illegal and all the evidence seized as a result of that would not be admissible. And essentially the case was dismissed after that and nothing more was heard for until 2003. When it came in front of Judge McLean, it was originally filed in a new search warrant application to search a different residence. The State or the Federal prosecution in that case, I believe what happened is they were initiating plea discussions, and those plea discussions weren't going in favor of the prosecution, so they went back and re-indicted my particular defendant for the evidence that was seized in 2001 and ultimately suppressed it by Judge McLean. Kennedy. You said re-indicted. Do you mean indicted? Filed the superseding information. Pardon me? Filed the superseding information. Now, as I understand the collateral estoppel doctrine, in the United States v. Little and United States v. Ayers, Judge Al-Hakam wrote both of those decisions. These cases are different from those particular cases in that in those cases, the defendant was asking the Court to interpret a broader grant of rights by the State. And this Court declined to do that, indicating that we will use in relation to search warrant applications, we will use the totality of the circumstances. And therefore, State law does not apply. This case is different because not only do we have a heightened, a broader privacy right in Montana, but in this case the Court actually made a decision. The Court made a decision from a State officer requesting a State search warrant, and its very own grant of that State search warrant turned around, reviewed the record, and said, I would not have issued that search warrant would have I known these details. And I think that's the key point in this case. I don't think that the Federal system is allowed to come back in and overrule that in light of our broadened sense of privacy. And the reason I say that is because in Montana we have a heightened sense of privacy. And the Federal Constitution has always been a floor to Constitution. I'm embarrassed to have to do this. I was looking at something else, and I picked back up as you finished the sentence, I would not have done that had I known the details. Can you back up and tell me what that half sentence was attached to? Yes. Judge McClain ultimately was the one who reviewed the probable cause associated with the search warrant application. Meaning the officer went to him and said, would you sign this search warrant application? The judge signed it and then later in a hearing went back and reviewed it and said, if I would have known what I know now, I would have said there was no probable cause based on the falsities that were presented in that search warrant application. So ultimately he decided that his own search warrant was illegal and suppressed all the evidence resulting from that. And that's in the State court? That's in the State court. And that's the real difference I see between this case and … And it's that State court decision, I'll call it, that you're arguing is entitled to collateral estoppel here. Yes. Even though the Federal government was not a party? Yes. How do you get around the fact that the United States was not a party to that earlier determination? Because we have a heightened sense of privacy. No, I'm asking you a straightforward collateral estoppel question. How do you get non-mutual collateral estoppel when the United States did not have its day in court, in the State court? I do not. I say that our heightened sense of privacy trumps the collateral estoppel doctrine. I see. So you're not really arguing collateral estoppel. It would be – it was labeled several different things when it was opened in the district court in front of Judge Malloy. It was labeled res judicata. It was collateral estoppel, committee. I would – I call it a State constitutional supremacy issue. But here I think – but if it's not collateral estoppel or res judicata but with the collateral estoppel subdivision, then all we have is two different judges disagreeing. And so district judge, Federal district judge disagrees. I guess my counterargument to that is – and I understand what you're saying. I've went back and forth with this several times. But when a judge – a State court judge is issuing a search warrant, he is considering State law and State constitution. And that's what's in the back of his mind. And in a State court judge's mind, what's in the back of theirs, we have a heightened sense of privacy in Montana. Well, if you're trying to predict what another judge is going to do, you might have in Montana, we're probably going to win in Federal court. That's very different from binding the Federal court. But I'm saying that because we have a heightened sense of privacy in Montana, that that trumps the Federal constitution. How do we know that if the U.S. attorney had been able to argue to that State judge that he would have come up with the same conclusion about the Montana constitution, that it was – had a heightened protection? The – We don't know, do we? We don't. And the State judge's opinion, Judge McClain's opinion, doesn't go into constitutional issues, doesn't go into privacy issues, just says there wasn't probable cause. Because we've had a series of these problems going on for a number of months now where the government has lost evidence and done this and done that, and I'm just finding there's no probable cause. And I think he has the ultimate say in it, because when he issues that, he issues it in accordance with Montana law. And I'm saying that the Federal constitution cannot grant rights below what we have said we're going to grant in Montana. In Montana, we're granting broader rights to all of our citizens, and the United States Federal government cannot go below those rights. Those rights extend, and they're broader, to every citizen in the boundaries of Montana. It's actually quite an interesting question. Is it whether or not Montana law that binds what Montana law enforcement authorities can do also binds the United States government? And I think it does, and that's my argument. I will say that there is no case law on it. I mean, there's dicta from various different cases. You know, to fulfill my duties and inform the Court, I mean, my research of some Montana state law doesn't exactly address whether the article to section 11 or section 10 goes to issues of probable cause in relation to search warrants. Usually the privacy clause is around warrantless searches, thermal imaging, dog sniffs, things like that. But we say, in Montana, we'll risk it. We don't want those things in Montana. And I will have one more minute to rebuttal. Maybe I'll address the sanction issue again. Thank you. Good afternoon, Your Honors. As Todd said, my name is Katie DeSoto, and I represent Defendant Rebecca Staber in this case. I'm going to sort of switch topics a little bit and talk about some of the issues that I think are relevant and pressing to Ms. Staber's appeal. And the first is the concept of the Frenchtown informant. And in my mind, the Frenchtown informant is the thread that links a lot of what was in the search warrant application together. If you read through the search warrant application, and I direct you specifically to page 6, Agent Michael Heaney served a search warrant at a residence in Frenchtown, Montana. He had learned through an informant that David Chase had a methamphetamine lab in the garage. And a lot of what the testimony centered on at the hearing was what happened during that search, who the informant was. Rebecca Staber was not a party to the state case. Rebecca Staber was not a known person at that time, in fact, not even known to David Chase at that time. And so she does not have standing to challenge that actual search warrant. But I think what it does is link up the subsequent information found in this informant that Agent Heaney relied upon later. And I would direct you to page 7 of the search warrant application in which it states, on February 7, 2003, Agent Heaney met with the same informant that told him about the Frenchtown meth lab. The informant has provided reliable information to Agent Heaney in the past. And what was clear to me in reading the briefing of the United States and sitting through the hearing was that Agent Heaney relied upon the court's reliance of putting those two informants as the same person. And only when we got into the Federal case did Heaney state for the first time, well, actually, it was Lori Polk who had provided information to me in the past, but they're the same weight, same credibility. It doesn't make a difference. I would submit to the Court that it actually does make a difference. The way that Lori Polk came into this case in the first place was at the very inception of the whole relationship between Agent Heaney and David Chase. Or, I'm sorry, Agent Heaney and David Chase. And that is that somebody in Missoula, an officer in Missoula, received an anonymous phone call that simply said, Methamphetamine Lab, Inspiration Drive, Number 3, click. Completely anonymous. No way to corroborate it. Agent Heaney followed up and did a garbage search, checked out the license plates of the cars, and did get a search warrant for that location. At that time, the resident of the location, Steve Ocker, said when he was served with the search warrant, all this stuff isn't mine, it's David Chase. After various debriefings with Steve Ocker, Agent Heaney applied for and got a search warrant to go into the plate, the location at Inspiration Drive. The tape that resulted from the contact between David Chase and Steve Ocker was inaudible, and it was on that basis that Judge McLean suppressed all the evidence. I think what's key is not so much that a state court judge suppressed evidence in relying upon state law and the state constitution. I think what is key is that that same agent, in on this case from the very beginning, omitted that fact when he went to another state court judge to get a warrant. And that is the application that we are dealing with in this federal case. I think that was a material fact that should have been provided to the court. More importantly, it's very important, or it's very key, that the informant from the Frenchtown Wire was subsequently relied upon in relation to Rebecca Staber. And I think that some of the issues, and if you look at United States v. Standard, I think it's very important that an affiant can not only mislead a judge by putting in wrong information, but also by omitting certain information. Now, that, all of those, the wrong information was in the state search warrant. There is only one search warrant, Your Honor. The state, the search warrant that was presented to Judge Larson and signed by Judge Larson is the search warrant application relied upon by the Federal government in this case. There was no subsequent independent application to Magistrate Erickson, who would be the Federal magistrate in Missoula that would handle search warrants originating from a Federal agent. It simply was the State court determination that there was probable cause. And so what you need to do, then, is look at what the subsequent contact with that confidential informant provided. And the way it's stated in the application clearly implies that it was the same person who got the information regarding the Frenchtown lab at Twilight Lane. That was the same person that then provided information for the first time about Rebecca Staber, when, in fact, an agent he needed admitted that Lori Polk, who actually provided the subsequent information, had never provided any information about Rebecca Staber. Are you talking about the same search warrant or a different one? Well, what there are, Your Honor, there were a series of search warrants. The search warrant application that was used in the Federal prosecution in this case, we call the Mount Avenue search warrant. And that was signed by a State court judge, not by the Federal magistrate. But in the part of what was incorporated in the Mount Avenue application was information from the Twilight Lane search. And Agent Heaney omitted the fact that that had been suppressed by Judge McClain. What he needed to do was provide some way to make the subsequent informant, Lori Polk, seem as if she had provided reliable information in the past. And so what he did was say that there's a Frenchtown informant. The Frenchtown informant resulted in this garage meth lab bust. The Frenchtown informant then later came and told me, hey, Becca Staber and David Chase, oh, actually, told him not only that Becca Staber and David Chase had been seen in a store purchasing pseudofedrin, but also admitted that she had no personal knowledge of this. It was related to her third hand by a friend that was never identified. We have no way of knowing who that was. We have no way to verify this. So what we have is an informant who provided at some point in the past a simple statement, meth lab, Inspiration Drive, click, provided then unverifiable third-hand information later. And the way that Agent Heaney was able to bolster that was by clearly linking the two. And in doing that, I believe that was a material omission that resulted in a probable cause finding that the court should not have come to. I see that I have already gone through some of Mr. Nelson's time. So if there are no questions, I will. Okay. Thank you. Thank you. In order to preserve harmonious relations among the co-counsel, why don't we give you five minutes? It's more than generous, Your Honor. My name is Andy Nelson. I represent Defendant Ronnie Joseph Staber in this case. Due to the fact that I don't have very much time, I think I'd better focus on what's important or try to. And with all due respect to co-counsel, my take on this case is a little bit different. I don't think that you need to adopt a new rule or a new approach or get into comedy, supremacy, federalism, all that stuff. I think the Franks framework works just fine. Franks, as you know, focuses on the search warrant application because the magistrate is confined to the four corners. It has to be a mechanism to ferret out bad information. So the policy underlying the whole procedure is to not let law enforcement use information that's gained illegally. And that's what happened in this case. It is very factually confusing, and that's why you have clerks, I suppose. But there's a bunch of search warrants. The one that the Stabers are concerned with is the Mount Avenue search warrant, and Ms. DeSoto quoted from that a little bit. I won't get into what I think is misleading in that, but I will say that it's on its face, in my opinion, and I think the law supports this, a material omission for a state agent to go across the hall in the Missoula County Courthouse to another judge that the evidence in paragraph one, when you get past the boilerplate, has all been suppressed. It undermines the policy behind Franks. Does the officer get to choose which judge issues the size of the search warrant application? Well, that's a very fair question. I can't say. I know maybe Judge Larson was just unfortunate enough to be in his office that day. I don't know. But I think the record could support the inference that Agent Heaney was doing a little bit of judge forum shopping here. If we assume that that was omitted from the search warrant application, don't we have to determine that that would have made a difference in the issuance of the warrant? And what's your argument regarding that? Well, my argument regarding that would entail discussion of the remaining sources of information, the confidential informant known as Lori Pope, the woman, Sarah Faff, who was most of the basis for this search warrant application. And it's odd to me that Agent Heaney never bothered to interview her personally, never revealed that in the search warrant application. Lori Pope and Ms. DeSoto discussed a little bit. But here Agent Heaney is talking about this informant who he knows is Lori Pope. He doesn't tell the court that. Is he required to tell the court? No, but I think, again, the record supports the inference that he doesn't tell the judge that because then he has to explain that the stuff in paragraph 1 was from her anonymous call, Inspiration Lab, Inspiration Lane, Meth Lab, Hang Up, and that that's all been suppressed. So he just doesn't want to go there. He just leaves that out. It's a convenient way to keep the court from tracing that information back to its source. Yes, that would require this court to make some inferences and conclusions, but I think the record supports those. Sarah Faff, no one's really talked about her today. She was never interviewed by Agent Heaney. The only corroboration of the information she provided was that Officer McClain Okay, we have Judge McClain and Officer McClain. Officer McClain drove by and observed the cars that she said would be there were there. Well, the Mondanza case pretty clearly says that corroboration of innocent details like cars parked out front don't support a finding of probable cause. There were no future predictions of what's not like the Gates case where the informant said, and by the way, they'll be taking a bunch of drugs to Florida on this flight. There was none of that. Does corroboration require her information? Well, no, Your Honor, it's not. But I do think that the Johnson test requires that there's some basis for finding that the information is reliable and some basis for finding that the confidential informant is reliable, and the cases phrase that differently. She wasn't a confidential informant. She was not a confidential informant. She was a citizen. Correct. Isn't the law different? It is. I'm making an analogy there. It's just particularly disturbing that Agent Heaney doesn't ever bother to interview her. Counsel, the fact that something is disturbing doesn't necessarily mean that it meets the criteria for either a Frank's hearing or for suppression, does it? That is true, Your Honor. Judge Malloy found that a threshold showing was made and held the hearing. And it's just our argument today that when you look at the totality, which is the standard, that with Lori Pope, Sara Pfaff, all the stuff we've discussed, you kind of have to come to your own conclusion. But I believe that the conclusion should be that the district court erred and that this should have been suppressed. Okay. Thank you very much. And, Mr. Glazer, I think you have a minute. Oh, I'm sorry. That's your rebuttal time. It was getting late in the morning. Okay. We'll now hear from the government, and then we'll hear from you. That's not a promising start, Your Honor, but let me try. It's not a promising start for me, but you're doing fine. Thank you, Your Honor. Please don't take my brevity as making light of the arguments made by counsel. I just have some brief comments, and then I really want to turn this over to questions, because I want to start with this premise. We need to come into federal court, and we need to come into Judge Malloy's courtroom and what he knew and then why he made the ruling that he did. And the bottom line is everything complained about by the defendants in this case to you was the same complaints made to Judge Malloy. He knew all of these mistakes. He knew all of the omissions. He knew every inaccuracy, and over a two-day hearing, he clearly learned about everything that Agent Heaney did and didn't do. And there's just no better way to put it than what Judge Malloy said in his order, and I say that because it's exactly my words from the sum-up of the hearing. In this case, Agent Heaney was sloppy, but he was not either intentional or reckless in any of the omissions or inaccuracies that were part of these series of affidavits. That's the standard. That's the bottom line here. That's the standard that Judge Malloy was employing. Briefly, when you look to what occurred in the state court regarding the search that was held to be infirm by Judge McClain, you really need to look at what Judge McClain said in the basis for his ruling because it really undermines counsel's argument that this order of Judge McClain was even based on the Montana Constitution. What is clear is that Judge McClain was just sick to death of what had been occurring in his courtroom, or that seemed to be his statement because he said, this is a long line of evidence being lost, and in this case what had happened is the wire was destroyed. But what Judge Malloy was presented with was not only that, that the wire was destroyed and that Judge McClain didn't like it and kicked out the search warrant, but he also received information through testimony and exhibit by Agent Heaney that he had made contemporaneous notes with this wire and that those notes were, there was other evidence other than the wire tape that was destroyed. And there was another agent there, Agent Lewis, who testified as well. Although he didn't have contemporaneous notes, he was able to provide Judge Malloy with testimony about what he heard about this conversation. So really, the issue regarding however we want to phrase it, I think it's a supremacy argument more than anything, not collateral estoppel, but that order, it's not clear at all whether that was even based on the Montana Constitution or if it was a state judge who, probably very rightly so, was very upset at the agents who were appearing in front of him on a routine basis. The record in this case, though, is confusing, but to sum it up clearly, there were three warrants in this case. Each warrant built upon each other. David Chase was involved in all three of the warrants. It culminated with the stabbers in the Mount Avenue search. What we found all along the way is informants telling, either through very terse telephone calls like Lori Pope, or through direct contact, Steve Ocker, with the agents, that David Chase had meth labs and was manufacturing meth. And they investigated throughout the process that ended up at Mount Avenue. It wasn't perfect. In fact, the language used was inarticulate. It was inaccurate at times. It was sloppy police work. But Judge Malloy found Agent Haney to be credible. He found that he did not act deliberately or intentionally in any way. And really, the bottom line is, these errors make no difference with respect to the probable cause analysis that Judge Malloy had to make and this Court has to review. Are there any questions from the panel? No. I see none of you. Thank you. Thank you. Mr. Glazier? No rebuttal. The case of United States v. Staber, Chase and Staber, the linked cases, now submitted for decision. Thank you very much, all counsel. And the last case on the argument calendar is United States v. Young.
judges: Alarcon, W. Fletcher, Rawlinson